IN UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARSHA SEATON, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) ATOS HEALTHCARE SERVICES, LLC, ) ATOS IT OUTSOURCING SERVICES, LLC ) and ATOS IT SOLUTIONS AND SERVICES, ) INC., ) ) Defendants. ) | Case No. 1:21-cv-01526 Hon. Joan H. Lefkow |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff and Class Representative Marsha Seaton ("Plaintiff" or "Seaton" ) individually and on behalf of a class of individuals certified for settlement purposes ("Plaintiffs"), move for final approval of the Parties' Class Action Settlement of claims alleging that Defendants, Atos Healthcare Services ("Atos Healthcare"), Atos IT Outsourcing Services, LLC ("Atos IT Outsourcing"), and Atos IT Solutions and Services, Inc. ("Atos IT Solutions") (collectively, "Defendants") violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. by: (1) failing to inform individuals in writing that it would be collecting, storing, and using biometric data; (2) failing to inform individuals in writing of the specific purpose and length of time for which their biometric data is collected, stored, and used; (3) failing to obtain individuals' written release and/or consent for the collection, use, storage, and dissemination of their biometric data; and (4) failing to develop and adhere to a publicly-available retention schedule and guidelines for permanently destroying individuals' biometric data.

The Parties' settlement of this action is fair, reasonable, and adequate under the governing legal standards and satisfies all criteria for final approval. The Parties respectfully request that this Court: (1) grant Final Approval of the proposed Settlement Agreement and Release ("Settlement Agreement"), attached as <u>Exhibit 1</u>, including the release of claims as set forth therein, and (2) enter the Proposed Final Approval Order, attached hereto as <u>Exhibit 2</u>.[1]

On June 21, 2023, the Court preliminarily approved the Parties' non-reversionary Settlement. (Dkt. 53). Since that time, the Settlement Class Members have been notified of the terms of the Settlement, including the monetary relief, the allocation, and their right to object to or opt out of the Settlement. *See* <u>Exhibit 3</u>, Decl. of Johanna Olson Regarding Notice Administration ("<u>Admin Decl.</u>") ¶¶ 7-8; *see also* Ex. 3-A to Admin Decl. ("Class Notice"). Zero individuals in the Settlement Class excluded themselves from the Settlement, and zero individuals objected to the Settlement. <u>Admin Decl.</u> ¶¶ 9-10. With such overwhelming support for the Settlement and for the reasons stated below, the Court should grant final approval of the Parties' Settlement Agreement.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

As set forth in greater detail in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. 49), Plaintiff filed her Class Action Complaint in the Circuit Court of Cook County on February 8, 2021, alleging that Defendants violated BIPA when they required workers to use biometric timekeeping devices to clock into and out of work without first: (1) informing individuals in writing that they will be capturing, collecting, storing, using, and disseminating biometric data prior to doing so; (2) obtaining a written release for the capture of biometric data prior to such capture; (3) informing individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) developing and adhering to a

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement.

publicly available retention schedule and guidelines for permanently destroying biometric data.

After removing the matter to federal court on March 19, 2021 (Dkt. 1), the Parties briefed Defendants' Motion to Dismiss Plaintiff's Class Action Complaint, or, In the Alternative, To Stay The Litigation, which was granted in part and denied in part, and the Court stayed the Action on December 14, 2021, pending numerous Illinois Appellate Court opinion and the Seventh Circuit's decision *in Cothron v. White Castle Inc.* (Dkt. 30). On March 22, 2023, the stay was lifted following the Illinois Supreme Court decisions *in Tims v. Blackhourse Carries, Inc.,* 2023 IL 127801, and *Cothron*, 2023 IL 128004. (Dkt. 45). Soon thereafter, Defendants provided Plaintiff with the approximate putative class size, and the Parties began engaging in extensive, arms-length settlement negotiations, which culminated in the Settlement Agreement for which the Parties now seek final approval.

On June 19, 2023, Plaintiff filed the Unopposed Motion for Preliminary Approval of Class Action Settlement. (Dkt. 49). On June 21, 2023, the Court granted Preliminary Approval of the Settlement. (Dkt. 53).

## II. SUMMARY OF SETTLEMENT TERMS

### A. The Settlement Class.

The proposed Settlement Class includes all individuals working for Defendants in the State of Illinois who utilized a biometric timekeeping system while employed by at least one of the Defendants and had their biometric identifiers and/or biometric information as defined under the Illinois Biometric Information Privacy Act, 740 ILCS 14/10, collected, captured, received, obtained, maintained, stored, transmitted, or disclosed for the purpose of timekeeping for any Defendant at any time from February 5, 2016 to June 21, 2023. Ex. 1, ¶ 38.

The Class List compiled and provided by Defendants contained records for 57 Class

3

Members. Admin. Decl. ¶ 5. Zero Class Members excluded themselves. Admin. Decl. ¶ 9.

### B. The Settlement Amount and Allocation.

The Settlement will establish a $133,950.00 Settlement Fund. The gross Settlement Fund increased from $126,900.00 on a *pro rata* basis to account for the three (3) additional Class Members determined to be inadvertently excluded from Defendants' estimate. Ex. 1 ¶ 34 ("if Defendants' representation that 54 employees utilized the Timekeeping System at issue in the Action is in error, and more employees in Illinois utilized the Timekeeping System, then the amount of the Settlement Fund will increase on a pro rata basis, or by $2,350, for each additional employee in Illinois who utilized the Timekeeping System(s) at issue in this Action"). The Settlement Fund shall be allocated on a *pro rata* basis as follows: approximately $2,350 per Class Member, less Administrative Fees paid to the Settlement Administrator, a Fee Award to Class Counsel, and a Service Award to the Class Representative. *Id.* ¶ 47(a). Checks to the Settlement Class Members shall remain valid and negotiable for 120 days from the date of their issuance, and thereafter shall become void if not cashed within that time. *Id.* ¶ 47(d). Any uncashed amounts from the Settlement Fund will be distributed to the following *cy pres* recipient, upon Court approval: Public Justice. *Id.* ¶ 44.

### C. Release.

In exchange for the relief described herein, Settlement Class Members who have not excluded themselves will provide Defendants and the other Released Parties a full release of all Released Claims, including BIPA claims, arising out of, related to, or connected with the alleged scan, capture, collection, storage, possession, transmission, dissemination, disclosure, and/or other use of biometric identifiers and/or biometric information in connection with biometric timekeeping systems used by Defendants. Ex. 1, ¶¶ 29-30, § VI.

4

      **D.**     **Settlement Administration.**

      The Parties retained Analytics Consulting, LLC ("Analytics"), an experienced class action claims administrator, to administer the Settlement. *See* Ex. 1, ¶ 24; *see also* Admin. Decl. ¶¶ 1-2, 4. The Administration Expenses will be paid from the gross Settlement Fund. Ex. 1 ¶ 41(d). On July 5, 2023, Class Notices were mailed to 57 Settlement Class Members contained in the Class List via First Class mail. *See* Admin. Decl. ¶ 5. The Class Notice advised the Settlement Class that they could submit an exclusion and/or objection postmarked by August 21, 2023. *Id*. There were 7 Notice packets returned as undeliverable, without a forwarding address. *Id*. at ¶ 8. Analytics then performed skip traces on these Notice packets, which utilizes the individual's name and previous address for locating a current address. *Id*. After the trace was performed, 4 addresses were obtained, and Notice was promptly re-mailed to these persons via First Class mail. *Id*. Therefore, as of the date of this declaration, only 3 Notices of the 57 total remain undeliverable. *Id*.

      **E.**     **Exclusion and Objection Procedures.**

      The deadline to opt out or object to the settlement was August 21, 2023. *See* Admin. Decl. ¶ 9. This deadline has now passed. Zero Class Members requested exclusion from the settlement and zero Class Members objected. *Id*. ¶¶ 9-10.

**III.**     **THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23**

      Under Rule 23(c)(2)(B), notice must provide:

> [T]he best notice that is practicable under circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgement on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B)

As set forth above and demonstrated by the thoroughness of the Notice, the Parties' effort to effectuate notice by mail to the Class Members meets the requirements of Rule 23(c)(2)(B). *See* Admin. Decl. at Ex. A, Mailed Notice.

IV. **THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S BIPA CLAIMS.**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement, the court should consider the judgement of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Young v. Rolling in the Dough, Inc.*, No. 1:17-CV-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020). As set forth in detail below, the proposed settlement is fair, reasonable, and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of BIPA. Accordingly, it should be approved.

A. **The Settlement Is Fair, Reasonable, and Adequate.**

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to

evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

### 1. The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks (First Factor).

The Settlement is substantial considering Defendants' agreement to settle this case for $133,950.00 for a class of 57 workers. All Settlement Class Members who have not opted out are guaranteed an equal share of the gross Settlement Fund in the amount of approximately $2,350.00. After deducting approved amounts for attorneys' fees and costs, Settlement Administration Expenses and a Service Award to the Class Representative, the Settlement Payment amount nets to approximately $1,353 for each Class Member.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness

hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200. Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. While Plaintiff believes she would likely prevail on the merits of all her BIPA claims, Plaintiff would have to overcome Defendants' many anticipated defenses. If the Parties were to proceed with litigation, Plaintiff would be required to prevail on class certification and on motions for summary judgment, all of which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *Id*. at 582.

It is an unavoidable fact that BIPA cases are largely cases of first impression, and the risks and delays that would necessarily accompany briefing the arguments in both the trial and appellate courts were considered here. This Settlement—providing excellent monetary relief without

delay—is highly beneficial for the Settlement Class. When considered in light of the potential hurdles faced in obtaining recovery through continued litigation, and the delay that would entail, the relief is well deserving of this Court's final approval. And the Settlement provides far more than "a fraction of the potential recovery." Though not providing a maximum value that conceivably might be awarded at trial at a later date, the Settlement provides substantial guaranteed monetary benefits now. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate"). Here, the proposed Settlement ensures that Class Members will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. And, the Settlement thus ensures that the Settlement Class Members will receive significant monetary relief *now*. In light of the substantial recovery this settlement provides and the attendant risks of litigation, this factor weighs in favor of final approval.

### 2. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement, which also weighs in favor of final approval. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000). "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). Here, the Settlement allows Settlement Class Members to receive immediate relief, avoiding lengthy and costly additional litigation.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to

9

avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). What lies ahead would be years of litigation at every phase of this case. Although Class Counsel believes Plaintiff's case is strong, it is subject to considerable risks and costs if the case is not settled, as demonstrated above.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive class discovery would be required to establish liability and damages, resulting in numerous depositions, a fully briefed motion for Rule 23 class certification, potential decertification proceedings, and summary judgment practice on liability—all of which would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. On the other hand, "[s]ettlement allows the class to avoid inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Again, although Plaintiff believes in the strength of her claims—a risk that Defendants appreciated in light of the Settlement it agreed to—further litigation poses risks on both sides. Under these circumstances, the benefits of a guaranteed

10

recovery today as opposed to an uncertain result in the future, are readily apparent. Accordingly, this factor weighs in favor of final approval.

### 3. The Reaction of the Class Has Been Positive (Third Factor).

The Settlement Class's reaction to the Settlement has been overwhelmingly positive and weighs strongly in favor of final approval. Zero Class Members opted-out of the Settlement, and zero Class Members objected. The absence of objections by persons in the Settlement Class is significant in determining whether the proposed Settlement is reasonable to the Settlement Class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same). The lack of any opposition or exclusion requests demonstrates overwhelming support for the Settlement. Accordingly, this factor also favors final approval.

### 4. Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, there was absolutely no collusion here. *See Isby*, 75 F.3d at 1200. Once the stay was lifted, the Parties entered into arms-length settlement negotiations, and those negotiations continued over the course of several weeks. In short, it took the Parties considerable effort to reach the detailed terms of this Settlement now before the Court. *See* Exhibit 4, Affidavit of Catherine Mitchell ("Mitchell Aff."), at ¶ 8.

"There is usually an initial presumption of fairness when a proposed class settlement,

11

which was negotiated at arm's length by counsel for the class, is presented for court approval." Herbert B. Newberg & Alba Conte, *Newberg of Class Actions ("Newberg")*, §11.41 at 11-88 (4th ed. 2002); *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions, particularly employment and BIPA class actions, and are familiar with the strengths and weaknesses of the claims and defenses. (Mitchell Aff. ¶¶ 5-6, 12). Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel could make, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. *Id*. at. ¶ 12. Simply put, Class Counsel believe that the Settlement is certainly in the best interest of the Settlement Class. First, the monetary relief provided is consistent with relief in many similar class settlements and similar BIPA settlements. And a recovery for the Settlement Class now is preferable to years of litigation and inevitable appeals with no guarantee of recovery. This factor therefore weighs in favor of final approval.

### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This Action was resolved less than three years after it was filed. Though the Parties did not engage in formal discovery, this period involved extensive research, analysis, investigation, and informal discovery exchange regarding the scope of the class size and the Defendants' timekeeping policies and practices. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the Settlement – indeed, formal discovery, class certification, further dispositive motion practice, and trial preparation were the immediate tasks at hand. Given the significant amount of time and resources spent by the Parties advancing the lawsuit, this factor favors Final Approval.

V.  **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant her Unopposed Motion for Final Approval of Class Action Settlement, and enter the Proposed Final Approval Order, attached as Exhibit 2.

Date: August 30, 2023

Respectfully Submitted,

*/s/ Catherine Mitchell*

Ryan F. Stephan
James B. Zouras
Catherine Mitchell
**STEPHAN ZOURAS, LLP**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550 | 312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

**ATTORNEYS FOR PLAINTIFF
AND THE SETTLEMENT CLASS MEMBERS**

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on August 30, 2023, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Catherine Mitchell*